[Cite as *State v. Shouse*, 2014-Ohio-4620.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NO. CA2013-11-014 |
| Plaintiff-Appellee, | : | |
| | | O P I N I O N |
| | : | 10/20/2014 |
| - vs - | | |
| | : | |
| SCOTT E. SHOUSE, | : | |
| | | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
Case No. 20132162

Jessica A. Little, Brown County Prosecuting Attorney, Mary McMullen, 510 East State Street, Suite 2, Georgetown, Ohio 45121, for plaintiff-appellee

Timothy J. Kelly, 108 South High Street, P.O. Box 467, Mt. Orab, Ohio 45154, for defendant-appellant

**M. POWELL, J.**

{¶ 1} Defendant-appellant, Scott Shouse, appeals his conviction in the Brown County Court of Common Pleas for domestic violence.

{¶ 2} Appellant was indicted in July 2013 on one count of domestic violence, with a specification he had two prior domestic violence convictions. The state alleged that on June 25, 2013, appellant punched his wife, Veronica Shouse, in the face, lacerating and fracturing

her nose.  A jury trial was held on October 28, 2013.

{¶ 3}  At the beginning of voir dire, the trial court read the indictment to the prospective jurors, including the specification of appellant's two prior domestic violence convictions.  The reading of the specification included the case number and date of conviction for both prior domestic violence offenses.  Thereafter, voir dire was conducted, a jury was selected and sworn, and the trial court gave the jury preliminary instructions.  Then, just before opening statements, defense counsel stipulated to the two prior domestic violence convictions outside the presence of the jury.  As a remedy to the fact the specification was read at the beginning of voir dire, the trial court offered to give the jury a limiting instruction.  Defense counsel agreed this was a satisfactory resolution of the issue and further waived any objection to the issue.  The trial court subsequently instructed the jury that certain stipulations had been entered into and that the issue as to whether there were any prior convictions would not be part of their deliberations.

{¶ 4}  At trial, several witnesses testified on behalf of the state, including Veronica.  Appellant did not testify but Charles Brock, a lifelong friend of appellant, testified on appellant's behalf.  Veronica's 911 call, the recording of a telephone conversation between appellant and Veronica when the former was in jail, and medical records from the Southwest Regional Medical Center, where Veronica was transported following the incident, were admitted into evidence.  Defense counsel did not object to the admission of the medical records.

{¶ 5}  On October 28, 2013, the jury found appellant guilty of domestic violence.  The trial court sentenced appellant to 30 months in prison and to the 427 days remaining on his post-release control from a 2012 domestic violence conviction, and ordered that the sentences be served consecutively.

{¶ 6}  Appellant appeals, raising four assignments of error.

{¶ 7} Assignment of Error No. 1:

{¶ 8} IT WAS PLAIN ERROR FOR THE TRIAL COURT TO MINIMALLY INSTRUCT THE JURY THAT THEY SHOULD SIMPLY IGNORE THE INDICTMENT ALLEGATION THAT APPELLANT HAD TWO PRIOR DOMESTIC VIOLENCE CONVICTIONS AFTER DEFENSE COUNSEL STIPULATED TO THOSE CONVICTIONS.

{¶ 9} Appellant argues it was plain error for the trial court to only give a minimal limiting instruction to the jury following defense counsel's stipulation to appellant's two prior domestic violence convictions. Appellant asserts that given the trial court's detailed reading of the specification to the jurors during voir dire and Veronica's equivocal testimony at trial, the trial court's limiting jury instruction could not "un-ring" the prior convictions "bell," the jury was impermissibly tainted, and thus, "the only cure within the trial court's discretion would have been to grant a mistrial."[1]

{¶ 10} At the outset, we note that appellant concedes he did not object to the trial court's limiting jury instruction, thereby waiving all but plain error on appeal. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 41. Pursuant to Crim.R. 52(B), an alleged error constitutes plain error only if the error is obvious and but for the error, the outcome of the trial clearly would have been different. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 53 (12th Dist.), citing *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215. Notice of plain error is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *Morgan* at *id.*

{¶ 11} We also note appellant never moved for or was denied a mistrial. Appellant

---

1. According to appellant, Veronica's testimony was equivocal in part because when asked during her 911 call whether appellant had punched her in the face, Veronica told the operator, "I think he punched me. I don't know, it like happened so quickly. I just remember getting off of the bed and then, there was blood pouring all over the floor, all over the clothes, everywhere all over the bed and everything."

asserts the trial court should have sua sponte granted a mistrial and erred in failing to do so. However, a mistrial should not be ordered in a criminal case merely because an error or irregularity has occurred. *State v. Zeune*, 10th Dist. Franklin No. 10AP-1102, 2011-Ohio-5170, ¶ 8. "Rather, a mistrial is appropriate only when the substantial rights of the accused are adversely affected such that a fair trial is no longer possible." *Id.* "A trial court may grant a mistrial sua sponte when there is manifest necessity for the mistrial or when the ends of public justice would otherwise be defeated." *Id.* The determination of whether to grant a mistrial is within the sound discretion of the trial court as it is in the best position to determine whether the situation in the courtroom warrants the declaration of a mistrial. *State v. Glover*, 35 Ohio St.3d 18, 19 (1988).

{¶ 12} In the case at bar, the indictment and specification were read to the prospective jurors at the very beginning of voir dire. Thereafter, voir dire was conducted, a jury was selected and sworn, and the trial court gave the jury preliminary instructions. However, just before opening statements, defense counsel stipulated to the two prior domestic violence convictions outside the presence of the jury. As an agreed remedy to the fact the specification was read at the beginning of voir dire, the trial court instructed the jury as follows:

> Ladies and gentlemen of the jury, during the recess, there were certain stipulations that had been entered into, by the parties, which at this point in time, will now no longer, or actually, I will take away from you, the issue as to whether or not there were any prior convictions, that will not be a part of your deliberations, in this matter. Can you all agree to not use that in any regard, in your deliberations, one way or the other?

The jurors all agreed to comply with the jury instruction. Nonetheless, the trial court again asked: "Do you understand that that is not an issue before you. It is not to enter into your deliberations in any regard; do you understand that?" The jurors all replied yes. Subsequently, the trial court once again asked: "Can you all agree to do that?" Once again,

- 4 -

the jurors all agreed to comply with the jury instruction.

{¶ 13} "Curative instructions are presumed to be an effective way to remedy errors that occur during trial." *State v. Parker*, 5th Dist. Stark No. 2013CA00217, 2014-Ohio-3488, ¶ 36, citing *State v. Treesh*, 90 Ohio St.3d 460 (2001). A jury is presumed to follow and comply with instructions given to them by the trial court. *State v. Carpenter*, 12th Dist. Butler No. CA2005-11-494, 2007-Ohio-5790, ¶ 20, citing *Pang v. Minch*, 53 Ohio St.3d 186 (1990).

{¶ 14} We find that the limiting instruction given by the trial court was appropriate and plainly instructed the jury not to consider appellant's prior domestic violence convictions during its deliberations. Appellant asserts, however, that the trial court's minimal instruction could not "un-ring" the reading of the specification. Appellant's position assumes that the limiting instruction was ineffective and that the risk of prejudice from reading the specification was too high for the instruction to negate it. However, we decline to make this assumption because a jury is presumed to follow instructions given by the trial court. *See State v. Winston*, 8th Dist. Cuyahoga No. 81436, 2003-Ohio-653; *State v. McKinney*, 10th Dist. Franklin No. 13AP-211, 2013-Ohio-5394. In addition, appellant could have moved for a mistrial or for a more detailed limiting instruction but failed to do so.

{¶ 15} As is fully discussed in appellant's fourth assignment of error, Veronica's trial testimony and the circumstantial evidence presented by the state clearly identified appellant at the perpetrator. Given the ample evidence against appellant, the trial court's appropriate limiting instruction, appellant's lack of request for further curative instructions, and the fact the jury is presumed to follow instructions given by the trial court, we find no error, let alone plain error, in the trial court's failure to sua sponte grant a mistrial.

{¶ 16} Appellant's first assignment of error is overruled.

{¶ 17} Assignment of Error No. 2:

{¶ 18} IT WAS PLAIN ERROR FOR THE TRIAL COURT TO ADMIT THE SOUTHEST

REGIONAL MEDICAL CENTER RECORDS INTO EVIDENCE WHEN THEY MADE REPEATED REFERENCES TO THE VICTIM'S STATEMENTS THAT SHE HAD BEEN ASSAULTED BY HER HUSBAND.  [sic]

{¶ 19} Appellant argues it was plain error for the trial court to admit Exhibit 11, the medical records from the Southwest Regional Medical Center where Veronica was transported following the incident, because it contained five hearsay statements identifying appellant as the perpetrator.[2]  The state asserts Exhibit 11 was properly admitted under Evid.R. 803(4).

{¶ 20} Generally, "[t]he admissibility of relevant evidence rests within the sound discretion of the trial court," and "absent an abuse of discretion, an appellate court will not disturb a trial court's ruling as to the admissibility of evidence."  *State v. Kingery*, 12th Dist. Fayette No. CA2009-08-014, 2010-Ohio-1813, ¶ 25.  Appellant concedes, however, that he did not object to the admission of the medical records, thereby once again waiving all but plain error on appeal.  As noted previously, pursuant to Crim.R. 52(B), an alleged error constitutes plain error only if the error is obvious and that but for the error, the outcome of the trial clearly would have been different.  *Blankenburg*, 2012-Ohio-1289 at ¶ 53.

{¶ 21} Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Evid.R. 801(C).  Pursuant to Evid.R. 802, hearsay is not admissible unless the statement comes under some exception to the hearsay rule.  *State v. Nixon*, 12th Dist. Warren No. CA2011-11-116, 2012-Ohio-1292, ¶ 13.

{¶ 22} Evid.R. 803(4) excepts from the hearsay rule "[s]tatements made for the

---

2. Exhibit 11, a 16-page document, contains the following statements: (1) "patient is status post assault;" (2) "complaint of assault by husband – struck by fist on face, nose;" (3) "involved in domestic altercation with husband; suffered blows to face and sustained a nasal laceration;" (4) "s/p assault by husband;" and (5) "Pt states she was assaulted by husband. 'He punched me in the face.  I was in the bedroom and fell to the bed.'"

purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." "Absent some evidence that the identity of the perpetrator is necessary for medical purposes, however, statements identifying an assailant are not properly admitted pursuant to Evid.R. 803(4)." *Kingery*, 2010-Ohio-1813 at ¶ 34, citing *State v. Smith*, 8th Dist. Cuyahoga No. 90476, 2008-Ohio-5985.

{¶ 23} We find that the admission of the medical records did not rise to plain error. The first challenged statement did not identify a perpetrator, let alone appellant. While the other four statements identified Veronica's husband as the perpetrator, and were thus admitted in error, the statements were simply cumulative to her testimony at trial. *See Kingery* (although statements in medical records identifying the defendant as the perpetrator were admitted in error, error was harmless as statements were cumulative to the victim's testimony). As is fully discussed in appellant's fourth assignment of error, Veronica's testimony at trial and the circumstantial evidence presented by the state clearly identified appellant as the perpetrator. Thus, there was ample evidence against appellant to sustain the guilty verdict despite the admission of the unredacted medical records. *See State v. Houston*, 1st Dist. Hamilton No. C-090536, 2010-Ohio-2367 (finding that although a police report not admitted into evidence was erroneously given to the jury as an exhibit, error was harmless where police report contained information that was largely cumulative of other, properly admitted evidence, and where properly admitted evidence amply demonstrated the defendant's guilt). Appellant has therefore failed to show that the outcome of his trial clearly would have been different but for the alleged error, and he cannot prevail on his plain error claim.

{¶ 24} Appellant's second assignment of error is overruled.

{¶ 25} Assignment of Error No. 3:

{¶ 26} APPELLANT WAS NOT AFFORDED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

{¶ 27} Appellant argues his trial counsel was ineffective because he failed to (1) stipulate to appellant's prior domestic violence convictions in a timely manner (that is, before voir dire), (2) object to the trial court's minimal limiting jury instruction following appellant's stipulation to his prior domestic violence convictions, and (3) object to or seek redaction of the statements in the medical records identifying appellant as the perpetrator.

{¶ 28} In order to establish ineffective assistance of counsel, appellant must show that his trial counsel's performance was both deficient and prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989). Deficiency exists where trial counsel's performance "fell below an objective standard of reasonableness." *Strickland* at 688. Prejudice exists where there is a reasonable probability that, but for his counsel's unprofessional errors, the outcome of the proceeding would have been different. *Id.* at 694.

{¶ 29} "A defendant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other." *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000); *State v. Gilbert*, 12th Dist. Butler No. CA2010-09-240, 2011-Ohio-4340, ¶ 73. A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *State v. White*, 12th Dist. Butler No. CA2008-02-046, 2009-Ohio-2965, ¶ 32; *Bradley* at 143.

{¶ 30} After reviewing the record, we find that trial counsel's failure to earlier stipulate to appellant's prior domestic violence convictions and object to the trial court's limiting instruction following appellant's stipulation to his prior domestic violence convictions did not create a reasonable probability that, but for counsel's errors, the outcome of the trial would

have been different. As we stated earlier, there was ample evidence against appellant to sustain the guilty verdict. Further, the trial court's limiting instruction was appropriate and the jury is presumed to follow jury instructions.

{¶ 31} Likewise, we find that trial counsel's failure to object to or seek redaction of the statements in the medical records identifying appellant as the perpetrator did not create a reasonable probability that, but for counsel's errors, the outcome of the trial would have been different. Given Veronica's testimony at trial and the circumstantial evidence presented by the state identifying appellant as the perpetrator, the disputed statements in the medical records would have been cumulative evidence. *See State v. Jeffries*, 5th Dist. Stark No. 2005 CA 00128, 2006-Ohio-828 (trial counsel was not ineffective for failing to object to or seek redaction of victim's medical records which identified defendant as the perpetrator where disputed portion of medical records would have been cumulative evidence); *Houston*, 2010-Ohio-2367 (defendant suffered no prejudice where there was ample evidence against defendant to sustain guilty verdict despite the erroneously submitted police report to jury).

{¶ 32} Appellant's claim of ineffective assistance of trial counsel having failed under the prejudice prong of the *Strickland* test, his third assignment of error is overruled.

{¶ 33} Assignment of Error No. 4:

{¶ 34} APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 35} Appellant argues that given Veronica's equivocal testimony, the jury clearly lost its way in finding him guilty of domestic violence. Appellant also asserts the jury was necessarily swayed by the reading of the prior convictions specification and by the unredacted medical records.

{¶ 36} In determining whether a conviction is against the manifest weight of the evidence, this court, reviewing the entire record, must weigh the evidence and all reasonable

inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Lang*, 2011-Ohio-4215 at ¶ 220. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶ 37} An appellate court will not reverse a judgment as against the manifest weight of the evidence in a jury trial unless it unanimously disagrees with the jury's resolution of any conflicting testimony. *State v. Estes*, 12th Dist. Warren No. CA2013-12-126, 2014-Ohio-3295, ¶ 15. When reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. *Id.*

{¶ 38} Appellant was convicted of domestic violence in violation of R.C. 2919.25(A), which prohibits any person from "knowingly caus[ing] or attempt [ing] to cause physical harm to a family or household member."

{¶ 39} Appellant's assertion he was convicted of domestic violence because the jury was swayed by the medical records and the reading of the specification is speculative. The jury was instructed three times not to consider appellant's prior convictions in its deliberations. The jury is presumed to follow the trial court's instructions. *See Carpenter*, 2007-Ohio-5790. Further, the information contained in the medical records, including the fact that appellant was the perpetrator, was cumulative to Veronica's testimony at trial.

{¶ 40} Veronica testified that on the morning of June 25, 2013, she and appellant were arguing "really bad" at their house and appellant told her to leave. Appellant was angry. When Veronica told him she needed to go upstairs to get her cell phone, he told her "he was gonna beat me up when he got me up there." Once in their bedroom (where her cell phone

was), Veronica leaned down to get her phone, appellant went to grab her, she "shrugged him off" of her, and he lost his footing. She ended up on her back on the bed with appellant above her, his right fist pulled back. Veronica "told him not to do it" and closed her eyes. When she opened her eyes, "blood was everywhere" and "pouring out of [her] face," her teeth hurt, and she had a really bad headache. Veronica testified appellant did not want her to leave and kept telling her he was sorry. However, feeling angry and scared, Veronica drove to her parents' house where she would feel safe. Once there, she called 911. Veronica testified she "was in shock that he did it, and [she] was scared."

{¶ 41} The recording of the 911 call was played to the jury. Veronica told the 911 operator that her husband beat her and described the events leading to the incident. Veronica's description of the events mirrored her trial testimony, including appellant's threat he would beat her up once upstairs. Veronica told the operator that after she shrugged appellant off during the scuffle, appellant attacked her. When asked by the operator whether appellant had punched her in the face, Veronica replied: "I think he punched me. I don't know, it like happened so quickly. I just remember getting off of the bed and then, there was blood pouring all over the floor, all over the clothes, everywhere all over the bed and everything."

{¶ 42} Following the 911 call, a police officer dispatched to Veronica's parents' home took pictures of Veronica. One of the pictures showed Veronica with blood all over her face and clothes. At trial, Veronica testified the blood came from "where I was punched in the nose." The officer also took pictures of appellant after his arrest. One of the pictures showed blood on appellant's shorts. Veronica testified the blood was hers. She further testified she suffered a broken nose and a laceration on the bridge of her nose which were caused "from where he punched me in the face."

{¶ 43} The recording of one of the numerous telephone calls appellant made to

Veronica despite the no-contact order, was played to the jury. During that telephone call, appellant apologized for all the pain he put Veronica through, and told her (1) not to go to court, (2) she would not get in trouble if she did not come to court, and (3) "you don't have to go and I can go home."

{¶ 44} The police officer dispatched to the parents' home, a paramedic dispatched to the home, and Veronica's mother testified that Veronica was shaky, nervous, upset, and scared following the incident. The officer also testified that when he went to arrest appellant, the latter was agitated, denied he hit Veronica, and told the officer Veronica was lying. During the state's case in chief, the jury heard testimony that during her argument with appellant, Veronica broke the glass top of a table out of anger.

{¶ 45} Charles Brock, appellant's lifelong friend, testified on behalf of appellant. Brock testified that on the day of the incident, he was sleeping in a tent in appellant's backyard, having been just released from prison. Upon hearing a commotion, Brock "went up to the house, and Veronica come running out, screaming she was gonna call the law and say that he hit her and lie and say he hit her." Brock acknowledged he did not see appellant hit Veronica. It is undisputed no one witnessed what happened between appellant and Veronica in the bedroom.

{¶ 46} After carefully reviewing the record, we find that the jury did not lose its way in convicting appellant of domestic violence. Veronica testified at trial, and the state presented circumstantial evidence that appellant punched her in the face, lacerating and fracturing her nose. There was no suggestion or contrary explanation that she could have sustained these injuries in some other way. We decline to overturn the verdict because the jury did not believe testimony presented on appellant's behalf. "When conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony." *State v. Davis*, 12th Dist. Butler No. CA2010-06-

143, 2011-Ohio-2207, ¶ 43. As the trier of fact in this case, the jury was in the best position to judge the credibility of witnesses and the weight to be given the evidence. *Estes*, 2014-Ohio-3295 at ¶ 15. The jury was thus free to accept or reject any or all of appellant's evidence. *Davis* at *id.* Appellant's conviction for domestic violence is not against the manifest weight of the evidence.

{¶ 47} Appellant's fourth assignment of error is overruled.

{¶ 48} Judgment affirmed.

HENDRICKSON, P.J., and S. POWELL, J., concur.