[Cite as *State v. Rector*, 2019-Ohio-1589.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2018-05-059 |
| | : | O P I N I O N |
| - vs - | | 4/29/2019 |
| | : | |
| MELINDA RECTOR, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 2017CR33162


David P. Fornshell, Warren County Prosecuting Attorney, Kathryn M. Horvath, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

Bryan Scott Hicks, P.O. Box 359, Lebanon, Ohio 45036, for appellant


**HENDRICKSON, P.J.**

{¶ 1} Appellant, Melinda Rector, appeals from her convictions in the Warren County Court of Common Pleas for aggravated trafficking in drugs and possession of heroin. For the reasons set forth below, we affirm Rector's convictions.

{¶ 2} Following an investigation by the Warren County Drug Task Force ("WCDTF"), Rector was arrested and indicted for aggravated trafficking in drugs, possession of heroin, and four counts of aggravated possession of drugs. A three-day jury trial was held in April

and May 2018. At trial, the state presented testimony from Officer Dustin Kurilko, Sergeant Brandon Lacy, Detective Dan Schweitzer, and Officer Jeff Haller regarding the WCDTF's investigation.

{¶ 3} Officer Kurilko testified that he investigated "mid-to-upper-level" drug traffickers in Warren County and was advised by a confidential informant ("CI") that Hamilton County residents Rector and her fiancé, Kenny Oldfield, were trafficking significant amounts of methamphetamine and other drugs in Warren County. Although the CI had provided reliable information to the WCDTF on prior occasions, Kurilko contacted the Hamilton County DART task force to corroborate the information. At that time, the DART task force confirmed that it was aware of multiple complaints of drug trafficking related to Rector and Oldfield, and agreed to assist WCDTF with the drug investigation.

{¶ 4} Working with the WCDTF, the CI arranged to purchase one ounce of methamphetamine from Rector and Oldfield for $900 on April 20, 2017. Sergeant Lacy described the operation as a "controlled delivery buy bust," where Rector and Oldfield would leave their home in Hamilton County in their vehicle, and officers would follow them to Warren County. WCDTF planned to initiate a traffic stop after the couple's arrival in Warren County was confirmed. Due to the nature of the operation, Lacy testified that neither an informant nor an undercover officer was required to be on the scene.

{¶ 5} Kurilko indicated that on April 20, 2017 the CI was in contact with Rector and Oldfield and conveyed all information to the WCDTF. That evening, DART task force observed Rector and Oldfield leave their residence in a black Monte Carlo and head toward Warren County. After the pair left Hamilton County, the CI informed Kurilko that Rector and Oldfield had altered the plan and requested the CI to meet them at the Taco Bell in Lebanon, Ohio. Detective Schweitzer observed Rector and Oldfield arrive at Taco Bell in the black Monte Carlo, exit the vehicle, grab something from the trunk, and then enter the Taco Bell.

- 2 -

All officers involved were updated on Rector and Oldfield's location, and several officers, including Lacy and Kurilko, were near Taco Bell when the couple arrived.

{¶ 6} After entering Taco Bell, Rector and Oldfield ordered and sat down to eat. Shortly thereafter, Kurilko and Schweitzer, dressed in plain clothes, went inside to observe the couple. According to Kurilko, after marked units arrived, he and Schweitzer approached Rector and Oldfield, identified themselves as law enforcement, and indicated they were conducting a drug trafficking investigation. When the officers asked the couple to step outside, they agreed, and left their personal possessions on the table inside the Taco Bell. At that time, Oldfield was handcuffed and interviewed inside a police cruiser, while Rector was interviewed by Schweitzer nearby on the sidewalk.

{¶ 7} According to Schweitzer, he first advised Rector of her *Miranda* rights. Rector indicated she understood her rights and Schweitzer proceeded with the field interview. Rector told Schweitzer she and Oldfield were in Lebanon to meet a friend. However, upon learning that Oldfield was cooperating with Kurilko, she admitted that they were in Lebanon to sell an ounce of methamphetamine at the Taco Bell to some guy. She further stated Oldfield used her cell phone to arrange the drug transaction. Near the end of the interview, Rector consented to the search of her purse, which she left on the table inside Taco Bell. At that time, Officer Haller searched Rector's purse. During the search, Haller found a folded piece of paper in Rector's wallet, which contained a white powdery substance that Haller believed to be heroin. Haller notified Schweitzer, who remained with Rector. Rector then identified the substance as fentanyl.

{¶ 8} During the field interviews, Lacy remained inside Taco Bell to contain the area. While inside, Lacy observed a "bundled up taco wrapper" on the table with Rector and Oldfield's possessions. Although the wrapper was closed, Lacy testified he pulled at the edges and discovered what appeared to be a large bag of methamphetamine inside the

wrapper. Lacy notified Kurilko of his discovery, photographed the methamphetamine, and placed it in an evidence bag.

{¶ 9} After the initial field interviews, and the initial discovery of the methamphetamine and white powdery substance, Rector and Oldfield agreed to cooperate with the WCDTF. In order to avoid going to jail that evening, Rector and Oldfield agreed to provide the WCDTF with information regarding their supplier. At that time, Kurilko and Schweitzer drove Rector and Oldfield to the couple's residence in Hamilton County and executed a search warrant. During the drive, Rector and Oldfield identified their supplier, and indicated they owed him money for the one ounce of methamphetamine the WCDTF had confiscated. Rector further stated they could likely arrange for another "one-ounce deal, or greater," in the following days, however, another transaction did not occur.

{¶ 10} After the search warrant was executed, Rector gave Kurilko consent to search her cell phone. Upon inspection of Rector's cell phone, Kurilko found text messages between Rector's phone and the CI, and between Rector's phone and her supplier, "Kool-Aid."

{¶ 11} After the operation on April 20, 2017, the methamphetamine found inside the Taco Bell wrapper and the white powdery substance found in Rector's wallet were identified and weighed by Stanton Wheasler, a forensic scientist with the Ohio Bureau of Criminal Investigation. With regard to the substance found in the Taco Bell wrapper, Wheasler concluded that the substance was methamphetamine and weighed 27.41 grams. He further indicated that the substance from Rector's wallet was a mixture of U-47700, furanylfentanyl, heroin, and carfentanil, and weighed .23 grams.

{¶ 12} At trial, Rector testified in her own defense and presented testimony from Oldfield. Both testified that Rector did not know about the drug transaction and was not involved in selling drugs. On May 2, 2018, after considering the evidence presented, the jury

found Rector guilty as charged in the indictment. The trial court merged several of the offenses for sentencing purposes, and the state elected to proceed on the aggravated trafficking in drugs and possession of heroin charges. As a result, the trial court sentenced Rector to an aggregate three-year mandatory prison term.

{¶ 13} Rector timely appeals her convictions, raising three assignments of error.

{¶ 14} Assignment of Error No. 1:

{¶ 15} THE COURT PREJUDICED THE JURY BY ITS DEMEANOR.

{¶ 16} In her first assignment of error Rector argues the trial court "conveyed to the jury the perception that [her fiancé, Oldfield's] testimony was not to be respected" when it told Oldfield to "shut up" during his testimony. As such, Rector contends her convictions must be overturned because the trial court "clearly gave a perception of partiality."

{¶ 17} "It is well settled that a criminal trial before a biased judge is fundamentally unfair and denies a defendant due process of law." *State v. Dean*, 127 Ohio St.3d 140, 2010-Ohio-5070, ¶ 48. Judicial bias has been described as "'a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or [her] attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as opposed to an open state of mind which will be governed by the law and the facts.'" *State v. Vansickle*, 12th Dist. Fayette No. CA2013-03-005, 2014-Ohio-1324, ¶ 80, quoting *Dean* at ¶ 48. The supreme court also recognized that "'judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.'" *Dean* at ¶ 49, quoting *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147 (1994). Judicial remarks of this nature will support a challenge if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. *Id.* Where a reviewing court finds that a trial was infected by judicial bias, the remedy is a new trial. *Id.* at ¶ 2.

- 5 -

{¶ 18} In this matter, Oldfield was called as a defense witness and testified that Rector was uninvolved and unaware of the drug transaction. On cross-examination, the state objected to one of Oldfield's responses as being unresponsive. At that point, the following exchange occurred:

> [State]: I'm going to object as to being nonresponsive.
>
> Court: All right. Mr. Oldfield, that –
>
> Oldfield: I don't understand the question.
>
> Court: When I -- when I –
>
> Oldfield: Yeah.
>
> Court:  -- speak -- when I speak –
>
> Oldfield: Yes.
>
> Court: You shut up.
>
> Oldfield: All right. I'm sorry.

{¶ 19} Shortly after the exchange occurred, an on-the-record sidebar conference was held outside of the hearing of the jury. During the conference, defense counsel indicated he believed the trial court had "gotten [its] temper up" and requested it to "let the jury know that [the court is] not on anybody's side." The trial court responded that it was frustrated with Oldfield because "he's not responding to questions repeatedly[,]" and was talking over the judge when told to be quiet.

{¶ 20} At the close of the evidence, the trial court provided the following instruction: "If, during the course of this trial, the Court * * * has said or done anything that you consider an indication as to the Court's view on the facts, you are instructed to disregard it. The Judge must be, and I sincerely desire to be, impartial in presiding over this * * * trial." According to Rector, such an instruction, "buried near the end of the typical lengthy instruction, is hardly enough to unring the bell."

{¶ 21} After a review of the record, we find that the trial court's statement does not rise to the level of judicial bias. While the trial court's statement may have been critical of Oldfield's behavior on cross-examination, it did not relate to Oldfield's credibility, the truthfulness of his testimony, or the trial court's view of the evidence. Due to the nature of the trial court's remark, the statement did not reveal such a high degree of favoritism to the state or antagonism towards Oldfield or Rector as to make fair judgment impossible. Moreover, if any partiality was perceived, the trial court plainly instructed the jury to disregard any indication as to the court's view on the facts. "A jury is presumed to follow and comply with instructions given to them by the trial court." *State v. Shouse*, 12th Dist. Brown No. CA2013-11-014, 2014-Ohio-4620, ¶ 13. As such, we presume the jury disregarded any perceived partiality from the trial court's remark, as it was instructed.

{¶ 22} Accordingly, because Rector's trial was not infected by judicial bias, Rector's first assignment of error is overruled.

{¶ 23} Assignment of Error No. 2:

{¶ 24} THE COURT ABUSED ITS DISCRETION IN LIMITING THE SCOPE OF CROSS EXAMINATION.

{¶ 25} In her second assignment of error, Rector contends the trial court erred by refusing to allow her to challenge the reliability of the CI. Specifically, Rector argues the trial court prematurely shut down questions on cross-examination pertaining to the CI, which led the jury to believe the information provided was reliable.

{¶ 26} As previously mentioned, the CI did not testify at trial and was not present at the Taco Bell on April 20, 2017. In providing background information related to the WCDTF's investigation into Rector, Kurilko testified that the CI advised that Rector and Oldfield were trafficking methamphetamine and other drugs in Warren County. Kurilko further indicated he corroborated that information with DART task force in Hamilton County and organized the

April 20, 2017 operation. Kurilko, in addition to several other officers who were on the scene, testified extensively on direct and cross-examination about the WCDTF's investigation into Rector and her involvement in the drug transaction.

{¶ 27} On cross-examination, Rector asked Kurilko several questions related to the CI. In doing so, Rector was able to inform the jury that not all information provided by informants is taken as the truth and that the CI in this case had a criminal record. The cross-examination was ultimately "shut down" when counsel asked Kurilko whether the CI was a member of the Aryan Brotherhood.

{¶ 28} The cross-examination of a witness is a matter of right, but the extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court. *State v. Smith*, 12th Dist. Fayette No. CA2007-10-035, 2008-Ohio-5931, ¶ 39.

{¶ 29} In this matter, we find that the trial court did not abuse its discretion in limiting the scope of cross-examination, given the fact that the CI was not a witness, and that Kurilko was extensively cross-examined about his investigation into Rector and his observations of the operation. *State v. Jones*, 12th Dist. Butler No. CA2004-06-144, 2005-Ohio-3887, ¶ 26. Notably, the information provided by the CI regarding Rector was not the only evidence implicating her involvement. Through the officers' testimony, the state provided the jury direct evidence that demonstrated Rector's actual involvement in the drug transaction. Therefore, evidence relating to the CI's reliability was irrelevant. Rector's second assignment of error is overruled.

{¶ 30} Assignment of Error No. 3:

{¶ 31} THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 32} In her final assignment of error, Rector contends her conviction for aggravated trafficking in drugs was against the manifest weight of the evidence because the state failed

to prove beyond a reasonable doubt that Rector was knowingly involved in drug trafficking. Specifically, Rector contends the jury lost its way when it determined the credibility of the defense witnesses' testimony and the reliability of the confidential informant. As a consequence, Rector claims the jury was "thoroughly lost and unable to truly consider whether she was in fact not involved."

{¶ 33} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶ 34} Rector argues the state failed to prove beyond a reasonable doubt that she was knowingly involved in drug trafficking. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶ 35} At trial, the state presented testimony from several officers that Rector was

knowingly involved in drug trafficking. Kurilko testified that Rector was identified by the CI and subsequently investigated by the WCDTF. As such, the WCDTF had identified Rector in connection with drug trafficking prior to April 20, 2017. Kurilko further stated that Rector actively participated in the conversation regarding the couple's supplier and displayed independent knowledge of their supplier and his identity. Kurilko also established that Rector was in contact with the CI, and that text messages of drug activity were recovered from her cell phone.

{¶ 36} In addition to Kurilko's testimony, Schweitzer testified that Rector admitted that she and Oldfield were in Lebanon on April 20, 2017, to sell an ounce of methamphetamine at the Taco Bell to "some guy." She further admitted that Oldfield used her cell phone to arrange the transaction and that she and Oldfield could arrange for another similar transaction to take place.

{¶ 37} The defense attempted to establish Rector's lack of knowledge and participation in the drug trafficking through the testimony of Oldfield and Rector. Oldfield testified that Rector was unaware of the methamphetamine transaction, and that she believed they were going to visit a friend. He further stated that Rector had not seen, touched, or had any knowledge of the methamphetamine in his possession. However, on cross-examination Oldfield admitted he never told any of the officers that Rector did not know about the methamphetamine. Furthermore, Kurilko testified Oldfield "acknowledged the fact that [the WCDTF] knew [Rector] was also involved and was working with [Oldfield] selling drugs." Oldfield also indicated Rector would be truthful and cooperative with the investigation.

{¶ 38} Rector testified that although she was a drug addict, she had never dealt or trafficked drugs, and she had "never facilitated, aided and abetted, [or been] a complicitor" in the trafficking of drugs. She further indicated she believed they were going to a friend's

house on April 20, 2017, and only stopped at Taco Bell because they were hungry. According to Rector, Oldfield was acting nervous at Taco Bell, and stated "I'm sorry * * * I'm supposed to meet somebody." At that point, the officers walked up and asked them to go outside. She then claimed she told the officers to "ask Kenny" about the drugs, because she did not know anything about a drug delivery. On cross-examination, Rector admitted she previously testified that she told Schweitzer she and Oldfield were in Lebanon to sell an ounce of methamphetamine to "some guy" for "something like" $900 and that Oldfield used her cell phone to set it up.

{¶ 39} Considering the foregoing testimony, it is evident the jury heard overwhelming evidence related to Rector's knowledge and participation in the drug transaction, including her presence at the Taco Bell, her statements to the officers at the scene and en route to Hamilton County, the text messages on her cell phone to the CI, and the text messages on her cell phone to their supplier regarding the April 20, 2017 transaction. Furthermore, although they testified unequivocally that Rector was uninvolved, there were inconsistent statements made by Rector and Oldfield which impacted their credibility.

{¶ 40} The jury, as the original trier of fact, "was in the best position to judge the credibility of witnesses and the weight to be given the evidence." *State v. Patterson*, 12th Dist. Butler No. CA2001-09-222, 2002-Ohio-5996, ¶ 12. As such, we find Rector's conviction is not against the manifest weight of the evidence merely because the trier of fact believed the testimony of the state's witnesses. *State v. Crossty*, 12th Dist. Clermont Nos. CA2017-01-003, CA2017-01-004, and CA2017-01-005, 2017-Ohio-8267, ¶ 68; *State v. Burrell*, 12th Dist. Fayette No. CA2016-04-005, 2016-Ohio-8454, ¶ 22.

{¶ 41} Accordingly, we conclude that the jury did not lose its way or create such a manifest miscarriage of justice such that Rector's conviction must be reversed and a new trial ordered. Rector's third assignment of error is overruled.

- 11 -

{¶ 42} Having found Rector's final assignment of error to be without merit, we hereby affirm Rector's convictions for aggravated trafficking in drugs and possession of heroin.

{¶ 43} Judgment affirmed.

RINGLAND and M. POWELL, JJ., concur.