[Cite as *State v. Burrell*, 2016-Ohio-8454.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NO. CA2016-04-005 |
| Plaintiff-Appellee, | : | |
| | | O P I N I O N |
| | : | 12/28/2016 |
| - vs - | : | |
| | : | |
| ANTONIO LAMAR BURRELL, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CRI 20150232


Jess C. Weade, Fayette County Prosecuting Attorney, 110 East Court Street, Washington C.H., Ohio 43160, for plaintiff-appellee

Nikki T. Baszynski, Assistant State Public Defender, 250 East Broad Street, Suite 1400, Columbus, Ohio 43215, for defendant-appellant


**S. POWELL, J.**

{¶1}  Defendant-appellant, Antonio Lamar Burrell, appeals from his conviction in the Fayette County Court of Common Pleas for single counts of attempted aggravated murder and improper handling of a firearm in a motor vehicle.  For the reasons outlined below, we affirm.

{¶2}  On August 21, 2015, the Fayette County Grand Jury returned an indictment

charging Burrell with attempted aggravated murder in violation of R.C. 2903.01(A) and 2923.02(A), a first-degree felony, and improper handling of a firearm in a motor vehicle in violation of R.C. 2923.16(B), a fourth-degree felony. Both charges also included firearm and forfeiture specifications.[1]

{¶3} The charges stemmed from allegations that during the early morning hours of August 10, 2015, Burrell was driven to a nearby home by his girlfriend with a loaded shotgun in the car after he got into a dispute with a neighbor over two packs of cigarettes. Once there, Burrell exited the vehicle and fired five shots into the home with the purpose and intent to kill a woman inside, L.G.-R. It is undisputed that although the home was hit several times causing extensive damage to both the interior and exterior of the home, L.G.-R. did not suffer any physical injuries. Burrell and L.G.-R. live on the same street approximately seven houses apart.

{¶4} The matter ultimately proceeded to a one-day jury trial held on April 13, 2016. At trial, L.G.-R. testified a "super drunk" Burrell called her several times during the early morning hours of August 10, 2015 accusing her of stealing two packs of cigarettes from his freezer. As part of these calls, L.G.-R. testified Burrell threatened to come down to her house to fight in order to resolve the dispute. Shortly after receiving this threat, L.G.-R. testified she heard a loud noise coming from the front of her house. Believing that Burrell may have thrown a rock at her house, L.G.-R. testified that she looked outside her bedroom window where she saw Burrell leaning against a car holding a shotgun.

{¶5} Continuing, L.G.-R. then testified she heard a bang and "saw the sparks come from the end of the gun." According to L.G.-R., Burrell shot the front of her one-story home a

---

1. Burrell was also charged and subsequently convicted of improperly discharging a firearm at or into a habitation in violation of R.C. 2923.16(A)(1), a second-degree felony, and having weapons under disability in violation of R.C. 2923.13(A)(3), a third-degree felony. Burrell did not appeal his conviction as it relates to these charges, nor did he appeal the firearm and forfeiture specifications. This court will therefore limit its review accordingly.

total of five times. Photographs of the damage depict all three of the windows on the front of the home shot out. Photographs also show multiple holes caused by the shotgun pellets on the interior of the home. As one officer testified, the shots appeared "sporadic throughout the house. * * * Some were higher, some were lower," with some entering the home below the so-called "six foot line." After the shooting stopped, L.G.-R. testified she called 9-1-1 and watched Burrell get back into the vehicle and flee down an adjacent street. Five shotgun shell casings were later discovered in the middle of street directly in front of L.G.-R.'s home.

{¶6} In addition to L.G.-R.'s testimony, the state presented testimony from several police officers who testified the vehicle in which Burrell fled from the scene was driven by Burrell's girlfriend, Misty Carver. Carver was pulled over by police a short distance from the scene of the shooting. Once stopped, the police located an unloaded shotgun in the vehicle. Burrell, however, was not in the vehicle having already been dropped off at his house by Carver. Once Burrell was dropped off, Burrell called Carver's sister, B.R., from Carver's phone asking if Carver was at her house. Upon learning Carver was not at B.R.'s house, Burrell asked if she could come pick him up. B.R. testified that after agreeing to pick up Burrell, she asked Burrell what was going on, to which Burrell responded, "they wanted to play hard so I showed them hard."

{¶7} Burrell did not testify at trial. However, according to his statement to police, Burrell admitted to putting the shotgun in the car and going "down to fight them" after supposedly learning L.G.-R. and her boyfriend had "heat too." Specifically, Burrell told police that he woke up his girlfriend and asked her to drive him to L.G.-R.'s house because he had been drinking. Once there, Burrell stated he fired the shotgun multiple times at L.G.-R.'s home after seeing L.G.-R. "flash a little gun * * * and boom, that's when the fire happened." Explaining the incident further, Burrell stated "everything just happened so fast. When [L.G.-R. and her boyfriend] flashed that motherf**king gun that's when I got out [of the car] and like

- 3 -

boom. And then it went down from there." Burrell also claimed that he had "aimed high" so that he would not hurt anyone, and stressed that he would never physically harm a woman even though he could have "easily beat her up."

{¶8} Following trial, the jury returned a verdict finding Burrell guilty of the attempted aggravated murder of L.G.-R., as well as improperly handling a firearm in a motor vehicle. The trial court then held a sentencing hearing and sentenced Burrell to serve a total of 20 years in prison. Burrell now appeals from his conviction, raising four assignments of error for review.

{¶9} Assignment of Error No. 1:

{¶10} [BURRELL'S] CONVICTION FOR IMPROPERLY HANDLING A FIREARM IN A MOTOR VEHICLE WAS BASED ON INSUFFICIENT EVIDENCE.

{¶11} In his first assignment of error, Burrell argues his conviction for improperly handling of a firearm in a motor vehicle was not supported by sufficient evidence. We disagree.

{¶12} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Intihar*, 12th Dist. Warren No. CA2015-05-046, 2015-Ohio-5507, ¶ 9. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. In other words, "the test for sufficiency requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34, citing *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 33. When evaluating the sufficiency of the evidence,

- 4 -

this court must "defer to the trier of fact on questions of credibility and the weight assigned to the evidence." *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 132.

{¶13} Burrell was convicted of improperly handling a firearm in a motor vehicle in violation of R.C. 2923.16(B). Pursuant to that statute, "[n]o person shall knowingly transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle." In order for a person to "have" a gun under R.C. 2923.16(B), that person must either actually or constructively possess it. *In re I.L.J.F.*, 12th Dist. Butler No. CA2014-12-258, 2015-Ohio-2823, ¶ 31, citing *State v. Banks*, 10th Dist. Franklin No. 11AP-592, 2012-Ohio-1420, ¶ 5.

{¶14} Burrell argues his conviction for improperly handling of a firearm in a motor vehicle was not supported by sufficient evidence because there was no evidence as to "the condition or location of the firearm" while he was inside the vehicle. However, this ignores Burrell's own statement to police as it relates to his version of events that "[w]hen [L.G.-R. and her boyfriend] flashed that motherf**king gun that's when I got out [of the car] and like boom. And then it went down from there." Burrell's statement, which was admitted into evidence without objection, clearly indicates he had a loaded shotgun in the vehicle that was immediately accessible to him without him leaving the vehicle. This statement provides sufficient evidence for the jury, as the trier of fact, to establish the necessary elements of the offense beyond a reasonable doubt. Therefore, because we find there was sufficient evidence to support Burrell's conviction for improperly handling a firearm in a motor vehicle, Burrell's first assignment of error is overruled.

{¶15} Assignment of Error No. 2:

{¶16} [BURRELL'S] CONVICTION FOR ATTEMPTED AGGRAVATED MURDER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶17} In his second assignment of error, Burrell argues his conviction for attempted

aggravated murder was against the manifest weight of the evidence. We disagree.

{¶18} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34. An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Blair*, 12th Dist. Butler No. CA2014-01-023, 2015-Ohio-818, ¶ 43.

{¶19} Burrell was convicted of attempted aggravated murder in violation of R.C. 2903.01(A) and 2923.02(A). Aggravated murder in violation of R.C. 2903.01(A), the underlying offense upon which this attempt charge was predicated, provides that "[n]o person shall purposely, and with prior calculation and design, cause the death of another or the unlawful termination of another's pregnancy." As defined by R.C. 2901.22(A), "[a] person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature."

{¶20} Pursuant to R.C. 2923.02(A), which defines criminal attempt, "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or

result in the offense." In other words, a criminal attempt is complete when a person's acts constitute a substantial step in a sequence of events designed to result in the perpetration of a crime. *State v. Clements*, 12th Dist. Butler No. CA2009-11-277, 2010-Ohio-4801, ¶ 20, citing *State v. Green*, 122 Ohio App.3d 566, 569-570 (12th Dist.1997). As defined by the Ohio Supreme Court, a "substantial step" involves conduct that is "'strongly corroborative of the actor's criminal purpose.'" *State v. Group*, 98 Ohio St.3d 248, 2002-Ohio-7247, ¶ 95, quoting *State v. Woods*, 48 Ohio St.2d 127 (1976), paragraph one of the syllabus, judgment vacated on other grounds, 438 U.S. 910, 98 S.Ct. 3133 (1978).

{¶21} Burrell argues his conviction for attempted aggravated murder was against the manifest weight of the evidence because the evidence indicates he did not act purposefully with the intent to kill L.G.-R. when he fired multiple shotgun shots into her home. In support of this claim, Burrell argues that L.G.-R.'s testimony that she was inside the house at the time of the shooting was not credible. Instead, Burrell claims the evidence actually proves L.G.-R. was "outside of the house arguing with him prior to the shotgun being fired."

{¶22} The jury, as the trier of fact, clearly found Burrell's statements to police regarding L.G.-R.'s whereabouts at the time of the shooting lacked credibility. As noted above, after hearing a loud noise coming from the front of her house, L.G.-R. specifically testified that she looked outside her bedroom window where she saw Burrell leaning against a car holding a shotgun. L.G.-R. then testified that she heard a bang and "saw the sparks come from the end of the gun." It is well-established that it is the trier of fact who makes determinations of credibility and the weight to be given to the evidence. *State v. Erickson*, 12th Dist. Warren No. CA2014-10-131, 2015-Ohio-2086, ¶ 42, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. A conviction is not against the manifest weight of the evidence merely because the trier of fact believes the testimony of a witness for the state. *State v. Siney*, 12th Dist. Warren No. CA2004-04-044, 2005-Ohio-

1081, ¶ 60.

{¶23} Moreover, although Burrell told police he "aimed high" so as to not hurt anyone, and further stressed that he would never physically harm a woman, the evidence indicates that Burrell shot out each of the three windows on the front of L.G.-R.'s one-story home while L.G.-R. was inside. This caused extensive damage to both the interior and exterior of the home. Again, as one officer testified, the shots appeared "sporadic throughout the house. * * * Some were higher, some were lower," with some entering the home below the so-called "six foot line."

{¶24} As noted by the Ohio Supreme Court, "'a firearm is an inherently dangerous instrumentality, the use of which is likely to produce death.'" *State v. Dunlap*, 73 Ohio St.3d 308, 316 (1995), quoting *State v. Widner*, 69 Ohio St.2d 267, 270 (1982). In turn, Burrell's actions of firing a shotgun five times into L.G.-R.'s home while L.G.-R. was inside portrayed a substantial, but fortunately ineffectual, step towards causing L.G.-R.'s death. To claim otherwise is simply incorrect and improperly downplays the seriousness of Burrell's conduct. Therefore, because Burrell's attempted aggravated murder conviction was not against the manifest weight of the evidence, Burrell's second assignment of error is overruled.

{¶25} Assignment of Error No. 3:

{¶26} THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT ISSUED JURY INSTRUCTIONS FOR THE ATTEMPTED-AGGRAVATED-MURDER CHARGE THAT INCLUDED AN INSTRUCTION ON FORESEEABILITY.

{¶27} In his third assignment of error, Burrell argues the trial court committed plain error by instructing the jury on the attempted aggravated murder charge that Burrell was responsible for the natural and foreseeable results of his conduct as part of its instruction on causation. In support of this claim, Burrell challenges the following instruction as it relates to the charge of attempted aggravated murder:

- 8 -

> **Causation** is an essential element of the offense. Cause is an act which in a natural continuous sequence directly produces the physical harm and without which it would not have occurred.
>
> The defendant's responsibility is not limited to the immediate or most obvious result of the defendant's act. The defendant is also responsible for the natural and foreseeable results that follow, in the ordinary course of events, from the act.

(Emphasis sic.)

**{¶28}** According to Burrell, by including the standard foreseeability instruction within its instructions on causation, the trial court impermissibly lowered the state's burden of proof that required the state to prove he acted purposefully with the intent to kill L.G.-R. before he could be found guilty of attempted aggravated murder. We disagree.

**{¶29}** The Ohio Supreme Court has recognized that "the use of the foreseeability instruction in aggravated murder cases is questionable." *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, ¶ 54, citing *State v. Burchfield*, 66 Ohio St.3d 261, 263 (1993); *State v. Goodwin*, 84 Ohio St.3d 331, 346 (1999). However, the Ohio Supreme Court has also determined that "it is not plain error to give the standard foreseeability instruction in a murder case where the instructions as a whole make clear that the jury must find purpose to kill in order to convict." *State v. Sapp*, 105 Ohio St.3d 104, 2004-Ohio-7008, ¶ 98; *State v. Phillips*, 74 Ohio St.3d 72, 100 (1995). An error does not rise to the level of a plain error unless, but for the error, the outcome of the trial would have been different. *State v. Bradbury*, 12th Dist. Butler No. CA2015-06-111, 2016-Ohio-5091, ¶ 30.

**{¶30}** Here, prior to providing the jury with the standard foreseeability instruction, the trial court explicitly instructed the jury on the state's burden of proof and the requirement that the state prove Burrell acted purposefully with the intent to kill L.G.-R. before he could be found guilty of attempted aggravated murder. Specifically, the trial court instructed the jury in regards to purpose and intent as follows:

- 9 -

Before you can find the defendant guilty, you must find beyond a reasonable doubt that on or about the 10th day of August, 2015, and in Fayette County, Ohio, the defendant purposely engaged in conduct which, if successful, would have resulted in the death of another.

**Criminal attempt** is when one purposely does anything which is an act constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. To constitute a substantial step, the conduct must be strongly corroborative of the actor's criminal purpose.

The offense of **AGGRAVATED MURDER** is committed when one purposely, with prior calculation and design, causes the death of another.

**Purpose** to commit murder or to kill another is an essential element of the crime of **AGGRAVATED MURDER**. A person acts purposely when it is his specific intention to cause a certain result. It must be established in this case that at the time in question there was present in the mind of the defendant a specific intention to kill another. Purpose is a decision of the mind to do an act with a conscious objective of engaging in specific conduct. To do an act purposely is to do it intentionally and not accidentally. Purpose and intent mean the same thing. The purpose with which a person does an act is known only to himself, unless he expresses it to others or indicates it by his conduct.

(Emphasis sic.)

{¶31} After a thorough review of the record, we find the instructions provided to the jury, when taken as a whole, make clear that the jury was required to find Burrell acted purposefully with the intent to kill L.G.-R. before it could find him guilty of attempted aggravated murder. *See, e.g., State v. Williams*, 99 Ohio St.3d 493, 2003-Ohio-4396, ¶ 105 (finding no plain error where trial court included the standard foreseeability instruction in an aggravated murder case because the trial court also instructed the jury on the requirement of purpose and intent to kill prior to the causation language), reversed on other grounds on reconsideration, 103 Ohio St.3d 112, 2004-Ohio-4747.

{¶32} "'The trial court extensively instructed the jury on the requirement of purpose

- 10 -

and intent prior to the causation language.'" *Id.*, quoting *Goodwin*, 84 Ohio St.3d at 346. Therefore, just like the Ohio Supreme Court in *Williams*, we see nothing in the record that would indicate the trial court's subsequent inclusion of the standard foreseeability instruction impermissibly lowered the state's burden of proof on the charge of attempted aggravated murder so as to constitute a reversible error. Rather, the instructions, when taken as a whole, plainly instructed the jury that it was required to find Burrell acted purposefully with the intent to kill L.G.-R. before it could find him guilty of attempted aggravated murder. Accordingly, because we can find no error with the trial court's jury instructions, let alone plain error, Burrell's third assignment of error is overruled.

{¶33} Assignment of Error No. 4:

{¶34} TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE JURY INSTRUCTIONS.

{¶35} In his fourth assignment of error, Burrell argues he received ineffective assistance of counsel when his trial counsel failed to object to the trial court providing the jury with the standard foreseeability instruction within its instructions on causation as it relates to the attempted aggravated murder charge. In light of our decision under Burrell's third assignment of error, we find no merit to Burrell's ineffective assistance of counsel claim. Therefore, Burrell's fourth assignment of error is overruled.

{¶36} Judgment affirmed.


PIPER, P.J., and RINGLAND, J., concur.