[Cite as *State v. Crossty*, 2017-Ohio-8267.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

STATE OF OHIO,                                       :

      Plaintiff-Appellee,                       :

                                           :

      - vs -

CHARLES R. CROSSTY,                        :

      Defendant-Appellant.                     :

CASE NOS.  CA2017-01-003
                  CA2017-01-004
                  CA2017-01-005

O P I N I O N
10/23/2017

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2016CR0137

D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas A. Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

Soumyajit Dutta, 3278 Jefferson Avenue, Cincinnati, Ohio 45220, for defendant-appellant

**HENDRICKSON, P.J.**

{¶ 1} Defendant-appellant, Charles R. Crossty, appeals from his convictions in the Clermont County Court of Common Pleas for engaging in a pattern of corrupt activity and trafficking in heroin, cocaine, and fentanyl. For the reasons set forth below, we affirm appellant's convictions.

**I. FACTS**

{¶ 2} Following an investigation by the Clermont County Narcotics Unit ("CCNU") that

took place between January 22 and February 29, 2016, appellant was arrested and indicted on (1) six counts of trafficking in heroin in violation of R.C. 2925.03, of which two were felonies of the second degree, three were felonies of the third degree, and one was a felony of the fourth degree, (2) three counts of trafficking in cocaine in violation of R.C. 2925.03, felonies of the third degree, (3) two counts of aggravated trafficking in drugs in violation of R.C. 2925.03, felonies of the third degree, where the substance trafficked was fentanyl, a schedule II drug, and (4) one count of engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1), a felony of the first degree. All of the trafficking counts specified that that the offenses were committed in the vicinity of a juvenile, and three of the trafficking counts contained a specification seeking the forfeiture of $1,035 in cash that was found on appellant at the time he was arrested.

{¶ 3} A three-day bench trial was held in October 2016. At trial, the state presented testimony from Officer Nick DeRose and Lieutenant Douglas Ventre regarding CCNU's investigation into appellant's distribution of narcotics in and around New Richmond, Clermont County, Ohio. The state also presented testimony from James Burress, a confidential informant who purchased drugs from appellant, and from Brandy Moore and Rex Perkins, two individuals involved in appellant's drug-trafficking business.

{¶ 4} Officer DeRose testified that on January 22, 2016, Burress contacted him to express concern with the flood of heroin that had entered the New Richmond area. Burress, an admitted drug addict, informed DeRose that appellant was the source of the drugs, and Burress agreed to serve as a confidential informant as he knew appellant and had purchased drugs from him in the past.[1]

{¶ 5} Working with DeRose, Burress arranged to purchase heroin and cocaine from

_____

1. At the time Burress agreed to serve as a confidential informant he was on probation and was facing an obstruction charge, which, if convicted, would have been a violation of his probation.

- 2 -

appellant on six different occasions. Burress testified he called and texted appellant from the residence he was staying at on Weil Road in New Richmond, Clermont County, Ohio to set up the controlled buys. During these conversations, the type of drug, quantity to be purchased, and amount to be paid were established. Appellant directed Burress to various locations to complete the transactions. Two of the controlled buys occurred at Perkins' apartment, located at 718 Washington Street in New Richmond, Clermont County, Ohio. The other four controlled buys occurred on or near Eastern Avenue in Hamilton County, Ohio.

{¶ 6} At trial, Perkins testified he had known appellant for about nine or ten months and appellant dealt him heroin and crack cocaine. About three or four months before appellant was arrested in February 2016, appellant approached Perkins about establishing his apartment as a "trap house" where drugs would be sold. Perkins permitted appellant to sell drugs out of his apartment in exchange for appellant "tak[ing] care" of him by giving him drugs, picking things up for him from the store, and caring for the apartment. Perkins allowed his apartment to be used as a trap house, even though this violated the terms of a Cooperating Individual Agreement he signed with CCNU when he became a confidential informant in August 2014.

{¶ 7} Perkins testified appellant personally sold drugs out of the apartment "[b]asically all day, every day." Once the apartment was established as a trap house, appellant turned the day-to-day dealings over to Moore and Miguel "Mike" Rivera. According to Perkins, Moore was at his apartment "every day" to sell heroin and cocaine.

{¶ 8} Moore testified she met appellant in November 2015, and she bought drugs from him in New Richmond. Moore and appellant reached an agreement wherein Moore would sell appellant's drugs in exchange for appellant giving her drugs to feed her own addiction. Moore stated she and Rivera both sold drugs out of Perkins' apartment. For two

or three months, Moore stayed at Perkins' apartment and sold drugs "all day long," completing more than 100 drug transactions for appellant. Moore explained she received a new supply of drugs from appellant every day, usually around five grams of heroin and cocaine. Although the drugs were sold for "street prices," appellant dictated how much of the drugs were to be sold and for what price. Once the drugs were sold, Moore would turn the money over to appellant. Occasionally, Moore would drive appellant "downtown" to buy more drugs from his supplier. She would also occasionally bring buyers, such as Burress, to appellant.

### A. First Controlled Buy – January 25, 2016 (Count One)

{¶ 9} On January 25, 2016, while working with CCNU, Burress arranged to purchase 2 grams of heroin from appellant. The sale occurred at Perkins' apartment in New Richmond. Prior to arriving at the apartment, Burress met with DeRose. Burress was searched, a wire placed on him, and $365 given to him for the purchase of the heroin.

{¶ 10} DeRose drove Burress to the apartment and waited inside his car while Burress went into the apartment to purchase the drugs. Burress testified he had to settle an old debt owed to appellant before he could make the purchase. After giving appellant money to clear up this debt, appellant sold him the heroin they had agreed to over the phone. Burress explained appellant personally weighed the drugs and handed them over to him. Burress left the apartment and returned to DeRose's car, where he turned over drugs. The drugs were tested at the Hamilton County Crime Laboratory ("HCCL") and consisted of 1.219 grams of heroin.

### B. Second Controlled Buy – February 1, 2016 (Count Two)

{¶ 11} On February 1, 2016, Burress arranged a second buy with appellant for the purchase of 2 grams of heroin for $280. Appellant told Burress to go to Perkins' apartment

for the exchange.

{¶ 12}   Burress again met with DeRose, where he was searched, a wire placed on him, and $280 given to him for the purchase of the heroin.  DeRose drove Burress to the apartment and waited inside his car while Burress went inside to purchase the drugs. Appellant was not present at Perkins' apartment for the transaction.  Instead, Rivera handed the drugs over to Burress in exchange for $280.  After leaving the apartment, Burress turned the drugs over to DeRose.  The drugs were subsequently tested at HCCL and consisted of .930 grams of heroin.

### C.  Third Controlled Buy – February 18, 2016 (Count Three)

{¶ 13}   Following the first two buys, DeRose had Burress arrange to buy a larger amount of heroin from appellant.  On February 18, 2016, Burress contacted appellant by phone from a residence on Weil Road in New Richmond, and the terms of the purchase were agreed upon – 5 grams of heroin in exchange for $850.  Appellant told Burress New Richmond was getting "too hot" and he wanted to conduct the transaction at a UDF in Hamilton County.

{¶ 14}   Burress met with DeRose, where both Buress and his car were searched, a wire placed on him, and $850 given to him for the purchase of the heroin.  Burress drove himself to the UDF, where law enforcement officers were stationed to monitor the exchange.  Once at UDF, Burress received a phone call from appellant, directing him to a home on Eastern Avenue in Hamilton County.  Burress, followed by law enforcement, drove to the new location.

{¶ 15}   Once inside the home on Eastern Avenue, Burress gave appellant the agreed $850 in exchange for the drugs.  Burress explained appellant weighed the drugs before handing them over.  At the time of the exchange, Burress noticed there was a juvenile boy

and two juvenile girls present. Burress testified the two girls were between 12 and 16 years of age.

{¶ 16} After completing the transaction, Burress left the Eastern Avenue residence and met with DeRose to turn over the drugs he received from appellant. The drugs were tested at HCCL and were found to be 3.1 grams of heroin.

### D. Fourth Controlled Buy – February 22, 2016 (Count Four)

{¶ 17} On February 22, 2016, Burress arranged to purchase 8 grams of crack cocaine from appellant for $750. Appellant instructed Burress to go to the Eastern Avenue residence for the exchange.

{¶ 18} Burress again met with DeRose. Both Buress and his car were searched, a wire was placed on him, and $750 given to him for the purchase of the cocaine. Burress drove to the Eastern Avenue residence, entered the home, and purchased the drugs from appellant. The two female juveniles who had been present at the February 18, 2016 buy were present for this exchange. While purchasing the drugs, appellant told Burress about a problem he was having in New Richmond with a couple of his dealers. Burress testified appellant told him that "Mike – Miguel and Brandy had had a situation where * * * Mike was taking a package to Brandy and it either didn't get there or got there light * * * [and appellant] had to go down and straighten it out." During this transaction, Burress noticed handguns in the residence, which were laying out in the open.

{¶ 19} While Burress was inside the Eastern Avenue residence, he was being monitored by law enforcement. Lieutenant Ventre monitored the controlled buy from a vehicle parked near the residence. Ventre observed Burress, appellant, and a young female, later identified as 14-year-old L.M., enter the residence where the drug transaction took place. After Burress purchased the drugs and exited the home, Ventre saw appellant and

L.M. leave the residence together. Ventre also saw a boy in his "mid-teens" standing at the front door of the Eastern Avenue residence.

{¶ 20} After leaving the Eastern Avenue residence, Burress met with DeRose to turn over the drugs he had purchased from appellant. The drugs were tested at HCCL and found to consist of 5.034 grams of cocaine.

### E. Fifth Controlled Buy – February 24, 2016 (Count Five)

{¶ 21} On February 24, 2016, DeRose had Burress contact appellant to see about purchasing 6 grams of heroin and a firearm. Appellant offered to sell the drugs and firearm in exchange for $1,350. Burress was directed to the Eastern Avenue residence to make the exchange.

{¶ 22} Burress met with DeRose. Both Buress and his car were searched; Burress was fitted with a wire, and given $1,350 for the purchase of the gun and heroin. Burress drove to the Eastern Avenue residence and purchased the drugs from appellant. Appellant did not sell Burress a gun at this time. Appellant told Burress he would give him a gun later, as he "did not like to carry guns and dope at the same time." Burress testified three juveniles, who were between the ages of 14 and 16, were present at the time he purchased the drugs.

{¶ 23} Ventre and other law enforcement officers monitored Burress' purchase. Ventre observed appellant, Burress, and two other adults enter the Eastern Avenue residence. While the adults were inside, Ventre saw a young child, somewhere between six and eight years of age, get out of the vehicle appellant had been traveling in and enter the residence.

{¶ 24} After making his purchase and leaving the Eastern Avenue residence, Burress met with DeRose. Burress turned over the drugs, which were subsequently tested at HCCL.

The drugs consisted of 4.1 grams of heroin.

### F. Sixth Controlled Buy – February 29, 2016 (Counts Six through Eleven)

{¶ 25} The final purchase took place on February 29, 2016. As CCNU intended to arrest appellant after this purchase, CCNU enlisted assistance from the Cincinnati Police Department. DeRose had Burress contact appellant to purchase 15 grams of heroin and 12 grams of crack cocaine. Appellant offered to sell the drugs in exchange for $2,800. Burress was directed to go to the Eastern Avenue residence and wait on appellant to make the exchange.

{¶ 26} Prior to driving to Eastern Avenue, Burress met with DeRose, both he and his car were searched, a wire placed on him, and $2,800 that had been xeroxed by law enforcement was given to him for the purchase of the cocaine and heroin. Burress drove to Eastern Avenue and waited on appellant in his car. Burress was approached by another vehicle – a Hyundai Santa Fe that was driven by Donny Martin and contained Moore as a passenger. Moore had been in contact with appellant, who told her to pick up Burress and meet him at another location. Moore explained she was on her way to meet appellant to pick up drugs to sell and to drop off $900 she had made selling a previous batch of drugs for appellant.

{¶ 27} Burress got into the Santa Fe and the vehicle traveled south to meet appellant near River Road and Delhi Avenue in Cincinnati, Ohio. Martin parked the Santa Fe behind a Ford Expedition that appellant, an adult female, and four juveniles were traveling in. Burress approached appellant and gave him the $2,800 in exchange for the agreed upon drugs. Moore then gave appellant $900 and received crack cocaine and heroin from appellant.

{¶ 28} After the exchanges were made, the Expedition and Santa Fe drove away from the area. Each vehicle was stopped by law enforcement, who had continued to follow

and monitor Burress after he left Eastern Avenue. The occupants of the Santa Fe were arrested and searched, and the drugs Burress and Moore possessed were taken into evidence.[2] The drugs were later tested at HCCL. The drugs found in Burress' possession consisted of 5.328 grams of cocaine and 8.754 grams of heroin and fentanyl. The drugs found in Moore's possession consisted of 7.789 grams of cocaine and 8.613 grams of heroin and fentanyl.

{¶ 29} When the Expedition was stopped, officers found the vehicle occupied by appellant, an adult female, 14-year-old L.M., a girl in her "mid-teens," a girl around ten years of age, and a boy between seven and eight years of age. Appellant had in his possession $2,835, some of which was found in the vehicle's console and some of which was found in his pants pocket. Only $1,800 of the money found in appellant's possession was the "marked" money that had been xeroxed by law enforcement. Burress informed Ventre that appellant had put several thousand dollars in into a brown paper bag and left the bag on a stairwell in Delhi Avenue. Although officers searched the area, they were unable to locate the bag.

{¶ 30} Recordings from the wire Burress wore to each of the controlled buys were admitted into evidence.[3] The drugs recovered from each of the controlled buys and the laboratory results from testing said drugs were also admitted into evidence. Thereafter, the state rested and defense counsel moved for acquittal pursuant to Crim.R. 29, arguing that the state had not proved venue in its case-in-chief. The trial court denied appellant's motion. Although the defense did not call any witnesses to testify on appellant's behalf, defense

2. Prior to the Santa Fe being stopped by law enforcement, Moore concealed the drugs she received from appellant inside her pants, near her pelvic region. She surrendered the drugs to Officer DeRose after her arrest.

3. The recording from the February 18, 2016 buy did not capture Burress' purchase of the drugs from appellant, as the transaction occurred outside the range of the Bluetooth device that was used to operate the wire Burress was wearing.

counsel introduced into evidence certain records pertaining to Burress' address and Burress' and Perkins' statuses as confidential informants. The trial court accepted these exhibits into evidence.

{¶ 31} Closing arguments were heard by the court, and the court took the matter under advisement. On November 15, 2016, the trial court found appellant guilty of all offenses. However, with respect to two of the trafficking in heroin offenses (counts one and two), the court determined that the state failed to present evidence that the offenses had been committed in the vicinity of a juvenile. Appellant was sentenced on December 21, 2016, to an aggregate prison term of 20 years and nine months and the $1,035 in cash found on appellant at the time of his arrest was ordered forfeited to CCNU.

{¶ 32} Appellant timely appealed his convictions, raising four assignments of error.

## II. ANALYSIS

{¶ 33} Assignment of Error No. 1:

{¶ 34} THE EVIDENCE IS INSUFFICIENT TO ESTABLISH VENUE IN CLERMONT COUNTY BEYOND A REASONABLE DOUBT.

{¶ 35} In his first assignment of error, appellant argues the state failed to establish venue in Clermont County beyond a reasonable doubt.

{¶ 36} "'Venue commonly refers to the appropriate place of trial for a criminal prosecution within a state.'" *State v. Davis*, 12th Dist. Clinton No. CA2015-12-022, 2017-Ohio-495, ¶ 21, quoting *State v. Meridy*, 12th Dist. Clermont No. CA2003-11-091, 2005-Ohio-241, ¶ 12. "Establishing the correct venue is imperative in order to 'give the defendant the right to be tried in the *vicinity* of his alleged criminal activity.'" (Emphasis sic.) *State v. Baker*, 12th Dist. Warren No. CA2012-12-127, 2013-Ohio-2398, ¶ 11, quoting *Meridy* at ¶ 12. Proper venue ensures that "the state [does not] indiscriminately [seek] a favorable location

for trial or [select] a site that might be an inconvenience or disadvantage for the defendant." *Meridy* at ¶ 12.

{¶ 37} "Venue is not a material element of any offense charged." *Id.* Nonetheless, the state must prove beyond a reasonable doubt that the crime charged was committed in the county where the indictment was returned and the trial held, unless the issue of venue is waived by the defendant. *Id.*; *Baker* at ¶ 13. The standard for establishing venue is whether the defendant has a "significant nexus" with the county where the trial was held. *State v. Mielke*, 12th Dist. Warren No. CA2012-08-079, 2013-Ohio-1612, ¶ 14; *State v. Stone*, 12th Dist. Warren No. CA2007-11-132, 2008-Ohio-5671, ¶ 16. As a result, and pursuant to Ohio's venue statute, "[t]he trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and * * * in the territory of which the offense or any element of the offense was committed." R.C. 2901.12(A).

{¶ 38} Ohio's venue statute further provides that when an offender commits offenses in different jurisdictions as part of a course of criminal conduct, venue lies for all the offenses in any jurisdiction in which the offender committed one of the offenses or any element thereof. R.C. 2901.12(H). Offenses "committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective" serve as "prima-facie evidence of a course of criminal conduct." R.C. 2901.12(H)(3).

{¶ 39} In the present case, appellant was indicted and subsequently convicted in counts one through eight of the indictment of trafficking in heroin, fentanyl, and cocaine in violation of R.C. 2925.03(A)(1). This statute provides, in relevant part, that "[n]o person shall knowingly * * * [s]ell or offer to sell a controlled substance or a controlled substance analog." R.C. 2925.03(A)(1). In counts nine, ten, and eleven, appellant was indicted and convicted of trafficking in heroin, fentanyl, and cocaine in violation of R.C. 2925.03(A)(2), which provides

- 11 -

that "[n]o person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or controlled substance analog is intended for sale or resale by the offender or another person." Finally, in count twelve, appellant was indicted and convicted of engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1), which provides that "[n]o person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt."

{¶ 40} Appellant argues that "venue [is] of paramount importance in Counts 1 and 2." He contends that "[i]f venue was not established in those particular two counts, a strong argument for the dismissal of the remaining counts could be made, as everyone agreed Counts 3-11 essentially took place in Hamilton County, and Count 12 encompassed, in part, the allegations in Counts 1 and 2."

{¶ 41} The state, however, alleges it established venue in Clermont County under R.C. 2901.12(H)(3) in three ways, any one of which is sufficient to establishing venue in Clermont County. Specifically, the state contends it introduced evidence demonstrating appellant had a "significant nexus" with Clermont County as appellant, through a continuing course of criminal conduct, (1) arranged to sell drugs to Burress, when the transactions were planned and agreed to while Burress was in Clermont County, (2) sold drugs to Burress in Clermont County, and (3) engaged in a pattern of corrupt activity in Clermont County.

**A. Drug Transactions Planned and Agreed to in Clermont County**

{¶ 42} This court has previously determined that venue is proper in a county where the terms of a drug transaction were discussed and agreed upon, even if only one party to

the transaction is in the county when the agreement is reached. *See Meridy*, 2005-Ohio-241 at ¶ 10-24. In *Meridy*, a confidential informant, Rose, attempted to purchase crack cocaine from Jackson in Jackson's home in Clermont County. *Id.* at ¶ 2. Jackson, however, did not have the drugs on him; instead he obtained them by contacting his supplier, Meridy, who resided in Hamilton County. *Id.* Jackson would call Meridy from his Clermont County residence and the two would arrange the drug sales over the phone after "discussing such terms as price and quantity." *Id.* Jackson and Rose would then drive to Hamilton County to purchase the drugs from Meridy before returning to Jackson's home in Clermont County to divide the drugs. *Id.* Meridy was eventually arrested and charged with trafficking in crack cocaine in the Clermont County Court of Common Pleas. *Id.* at ¶ 3. A jury found Meridy guilty of these offenses. *Id.* at ¶ 7.

{¶ 43} On appeal, Meridy argued that venue in Clermont County was improper as "no drug activity involving him took place in Clermont County." *Id.* at ¶ 11. We disagreed, finding that "the evidence was sufficient to establish venue in Clermont County" as "[t]he evidence showed that there was a 'significant nexus' with Clermont County." *Id.* at ¶ 23. In finding venue proper, we stated:

> There is little doubt that the transaction that formed the basis of the charges against [Meridy] was planned and agreed to during telephone conversations in Clermont County between [Meridy], who was in Hamilton County, and his co-conspirator, * * * Jackson, who was at his residence in Bethel, Clermont County. The evidence showed that [Meridy] and Jackson discussed the important terms of the drug sale, including price and quantity, during these telephone conversations.

*Id.*

{¶ 44} The present case is analogous to *Meridy*. Burress testified he called appellant from Weil Road in New Richmond, Clermont County, Ohio to arrange the drug transactions. During these phone calls, the type of drug, quantity to be purchased, and amount to be paid

were agreed upon. Burress' testimony established a "significant nexus" with Clermont County and was sufficient to establish venue in Clermont County. *See also State v. Potee*, 12th Dist. Clermont No. CA2016-06-045, 2017-Ohio-2926, ¶ 27-28 (finding venue proper in Clermont County were there was testimony that the drug transaction was arranged in Clermont County even though the physical act of exchanging money for drugs occurred in Hamilton County).

{¶ 45} Appellant argues Burress' testimony is insufficient to establish venue as the state failed to introduce evidence corroborating that the phone calls were made while he was in Clermont County. Burress' telephone call logs were not introduced into evidence and neither Officer DeRose nor Lieutenant Ventre testified that a member of law enforcement was present for or observed the phone calls and text messages Burress and appellant exchanged. Appellant contends the lack of corroborating evidence, combined with the fact that Burress listed a Mt. Orab, Brown County, Ohio address as his residential address on the confidential informant paperwork he filled out for CCNU on January 22, 2016, raises serious doubt as to Burress being in Clermont County when he and appellant arranged the drug transactions.

{¶ 46} However, with respect to the Mt. Orab address, Burress testified the address was his mother's address. Although Burress used this address for mailing and probation purposes, he explained he lived with some friends on Weil Road in New Richmond, Clermont County, Ohio. Burress stated he was at the Weil Road address when he exchanged phone calls and text messages with appellant to arrange the drug transactions. Though there was no evidence introduced contradicting this testimony, appellant nonetheless argues Burress' testimony is insufficient to establish venue as "Burress was severely lacking in credibility." In support of his argument that Burress is not credible, appellant points to the fact that Burress

admittedly lied about receiving an education at M.I.T. and told "different version[s]" about his interactions with police and appellant "to protect [him]self."[4]

{¶ 47} "Credibility is not an issue in determining the sufficiency of the evidence [as it relates to venue], as all evidence must be construed in favor of the state." *State v. Stanley*, 10th Dist. Franklin No. 06AP-65, 2006-Ohio-4632, ¶ 10. *See also State v. Williams*, 4th Dist. Ross No. 709, 1980 Ohio App. LEXIS 12929, * 2 (Feb. 25, 1980). As Burress' testimony, if believed, would have convinced the average mind beyond a reasonable doubt that Clermont County was the proper venue, his testimony, on its own, was sufficient to establish venue in Clermont County. *See Stanley.* Moreover, we know the trial court found Burress' testimony credible, as the court specifically stated, "the Court [is] also finding that the testimony of the confidential informant is to be credible regarding his presence in Clermont County when he made the calls to [appellant]."

{¶ 48} Therefore, in accordance with R.C. 2901.12(H) and our precedent in *Meridy*, we conclude that venue in Clermont County, Ohio was proper as the state introduced

---

4. {¶ a} At trial, defense counsel questioned Burress as follows regarding the "different versions" of events he had told:

> {¶ b} Q: Now, have you told any different versions of what you've testified here today to anybody?
>
> {¶ c} A: Honestly, I'm sure that I have.
>
> {¶ d} * * *
>
> {¶ e} Q: Have you told a different version of what you've testified [to] here today?
>
> {¶ f} A: Yes.
>
> {¶ g} * * *
>
> {¶ h} Q: Okay. You've agreed that you've told a different version of what happened - -
>
> {¶ i} A: I've only told a different version of what happened to protect myself when it was going on.

evidence demonstrating appellant had a significant nexus with Clermont County. The drug transactions that formed the basis of the charges against appellant in counts one through three and counts five through eight were planned and agreed to in Clermont County.[5] The remaining counts, counts four and nine through twelve, were committed as part of a course of criminal conduct as the offenses were committed in furtherance of appellant's objective in trafficking in cocaine, heroin, and fentanyl for profit. The state therefore presented sufficient evidence to establish venue in Clermont County.

### B. Sale of Drugs to Burress in Clermont County

{¶ 49} The state also established venue when it introduced evidence that appellant, as part of a course of criminal conduct, sold drugs to Burress in Clermont County. Burress testified appellant personally sold him 1.219 grams of heroin at Perkins' apartment in New Richmond on January 25, 2016. Appellant also arranged a second sale of drugs to Burress at Perkins' apartment on February 1, 2016. Appellant had his associate, Rivera, handle the second transaction. Burress' testimony, combined with Perkin's testimony that appellant and Rivera sold drugs out of his apartment and he recalled seeing Burress and appellant inside his apartment in New Richmond, was sufficient to establish venue in Clermont County.

{¶ 50} Appellant contends that because Burress is an admitted liar and since a member of law enforcement did not observe him at Perkins' apartment at the time of the January 25, 2016 buy or February 1, 2016 buy, the court cannot rely on Burress' testimony to establish venue. However, as we stated above, "[c]redibility is not an issue in determining the sufficiency of the evidence [as it relates to venue], as all evidence must be construed in

---

5. Burress testified at trial that the controlled buys encompassing the charges set forth in counts one through three and counts five through eight were arranged with appellant through the exchange of phone calls and text messages while Burress was at a residence on Weil Road in New Richmond, Clermont County, Ohio. There was no testimony from Burress as to where he was located when the drug transaction encompassing count four was arranged with appellant. Nonetheless, venue in Clermont County for all charges was proper pursuant to R.C. 2901.12(H)(3).

favor of the state." *Stanley*, 2006-Ohio-463 at ¶ 10. Here Burress' and Perkins' testimony, if believed, would have convinced the average mind beyond a reasonable doubt that Clermont County was the proper venue as appellant personally, and through his associates, sold drugs in that county. Accordingly, the trafficking in heroin offenses in counts one and two properly place venue in Clermont County. As the remaining counts were committed in a continuing course of criminal conduct, venue lies in Clermont County for these offenses. R.C. 2901.12(H).

### C. Engaging in a Pattern of Corrupt Activity in Clermont County

{¶ 51} We also conclude that venue in Clermont County was established when the state introduced evidence that appellant engaged in a pattern of corrupt activity in the county. As discussed more thoroughly in our resolution of the second assignment of error, appellant and his associates, Perkins, Moore, and Rivera, were acting in an enterprise for the sale and distribution of illicit drugs for profit in Clermont County. In furtherance of this enterprise, appellant and his associates sold drugs out of Perkins' apartment in New Richmond, Clermont County, Ohio on a daily basis for more than three months. As the state introduced evidence that appellant operated his business, at least in part, out of Clermont County, venue in Clermont County was properly established. *See, e.g., Davis*, 2017-Ohio-495 at ¶ 26-28.

{¶ 52} Accordingly, for the reasons stated above, we find that the state presented sufficient evidence to establish venue in Clermont County. Appellant's first assignment of error is overruled.

{¶ 53} Assignment of Error No. 2:

{¶ 54} THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION OF THE CHARGE OF O.R.C. 2923.32(A)(1), ENGAGING IN A PATTERN OF CRIMINAL ACTIVITY.

{¶ 55} In his second assignment of error, appellant argues his conviction for engaging

in a pattern of corrupt activity was not supported by sufficient evidence. Specifically, appellant argues the state failed to present evidence demonstrating he and his associates, such as Moore, Perkins, and Rivera, were in an enterprise that shared a "common purpose." He also contends the state failed to establish that "two or more charged acts occurred in furtherance of the enterprise." We find no merit to appellant's arguments.

{¶ 56} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 57} Appellant was convicted of engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1), which provides that "[n]o person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt." An "enterprise" includes "any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity." R.C. 2923.31(C). Further, an enterprise "includes illicit as well as licit enterprises." *Id.* A "pattern of corrupt activity" is defined as "two or more incidents of corrupt activity, whether or not there has been a

conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." R.C. 2923.31(E). As pertinent to this case, "corrupt activity" means "engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in" trafficking in drugs in violation of R.C. 2925.03. R.C. 2923.31(I)(2)(c).

{¶ 58} "When determining whether a group of people are associated-in-fact, a court will look to whether the group is a 'continuing unit that functions with a common purpose.'" *Baker*, 2013-Ohio-2398 at ¶ 19, quoting *Boyle v. United States*, 556 U.S. 938, 948, 129 S.Ct. 2237 (2009). An association-in-fact enterprise must have three structural features: "a purpose, relationships among the associates, and longevity sufficient to permit the associates to pursue the enterprise's purpose." *Id.*, citing *Boyle* at 946.

{¶ 59} The state presented evidence that, if believed, would have convinced a trier of fact beyond a reasonable doubt that appellant engaged in a pattern of corrupt activity when he engaged in multiple drug transactions in Clermont County and Hamilton County. Contrary to appellant's arguments, evidence was introduced demonstrating that he was in an associated-in-fact enterprise with a group of people that had a common purpose of selling drugs for profit and that he engaged in more than two incidents of drug trafficking in furtherance of this enterprise. Appellant sold or directed his associates, Moore and Rivera, to sell drugs for profit. On six occasions, from January 25 to February 29, 2016, appellant or one of his associates sold heroin, fentanyl, and cocaine to a confidential informant in exchange for more than $6,000. Two of the sales occurred at Perkins' apartment, an established "trap house." As Perkins explained, appellant and his associates, Moore and Rivera, used the apartment to sell drugs for about three or four months before appellant was

arrested. Appellant personally sold drugs to Burress at the apartment on January 25, 2016. After setting up another sale with Burress over the phone, appellant had Rivera conduct the physical exchange of the drugs with Burress at the apartment on February 1, 2016. After these exchanges, Moore began selling drugs for appellant out of Perkins' apartment "all day long" for approximately two to three months. According to Moore, appellant provided her with a new supply of drugs "every day" and he dictated how much of the drugs were to be sold and for what price.

{¶ 60} Moore also brought buyers to appellant to purchase drugs. Moore testified that on February 29, 2016, she picked up Burress and transported him to appellant's location so that Burress could purchase drugs. Burress gave appellant $2,800 in exchange for 5.328 grams of cocaine and 8.754 grams of heroin and fentanyl. After appellant and Burress completed their transaction, she turned over $900 that she had made selling drugs for appellant. Appellant then gave Moore 7.789 grams of cocaine and 8.613 grams of heroin and fentanyl to sell for him.

{¶ 61} Appellant's argument that Moore and Perkins did not have a "common purpose" in the sale of the drugs because they did not receive a "financial gain" for the sale of the drugs is without merit. Both Perkins and Moore testified they profited from the sale of appellant's drugs out of the "trap house." In exchange for allowing his apartment to be used as a "trap house," Perkins received drugs, items he needed from the store, and care for his apartment. Moore also received drugs in exchange for selling drugs for appellant. The fact that Perkins' and Moore's profits from selling drugs were received in the form of goods (drugs) rather than money is immaterial.

{¶ 62} Accordingly, as the state introduced evidence demonstrating appellant was acting with others in an enterprise for the sale and distribution of illicit drugs in Clermont

County and Hamilton County, we find that appellant's conviction for engaging in a pattern of corrupt activity was supported by sufficient evidence. *See, e.g., Davis*, 2017-Ohio-495 at ¶ 16-55. Appellant's second assignment of error is, therefore, overruled.

{¶ 63} Assignment of Error No. 3:

{¶ 64} THE EVIDENCE TO CONVICT [APPELLANT] WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 65} In his third assignment of error appellant contends his convictions for trafficking in heroin, trafficking in cocaine, aggravated trafficking in drugs, and engaging in a pattern of corrupt activity were against the manifest weight of the evidence as his convictions were "based primarily on the mostly uncorroborated testimony of Burress and Moore," two individuals who appellant contends have "credibility issues and strong motives to falsely implicate [him] in these matters."

{¶ 66} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81, quoting *State v.*

- 21 -

*Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.*, citing *Thompkins*, 78 Ohio St.3d at 387.

{¶ 67} We have thoroughly reviewed the record in the present case and conclude that appellant's convictions for trafficking in heroin, trafficking in cocaine, aggravated trafficking in drugs, and engaging in a pattern of corrupt activity are not against the manifest weight of the evidence. The state presented testimony demonstrating that appellant and his associates, Rivera and Moore, were in the business of selling narcotics in Clermont County and Hamilton County. Testimony was offered by Moore and Perkins that a substantial portion of appellant's business was conducted out of Perkins' apartment in New Richmond, Ohio. They explained that appellant, Moore, or Rivera sold drugs out of Perkins' apartment "every day" for a period of more than three months. Burress testified that between January 25 and February 29, 2016, appellant offered to sell him and did sell him narcotics on six different occasions, either personally or through his associate Rivera. Moore and Burress also testified that appellant delivered drugs to Moore for sale on February 29, 2016. According to Burress and Lieutenant Ventre, the drug trafficking offenses that occurred on February 18, February 22, February 24, and February 29, 2016 all occurred in the presence or vicinity of a juvenile. Testing of the drugs sold to Burress and given to Moore demonstrated that the drugs consisted of heroin, fentanyl, and cocaine.

{¶ 68} Although appellant challenges the credibility of Burress' and Moore's testimony, the trial court, as the original trier of fact, "was in the best position to judge the credibility of witnesses and the weight to be given the evidence." *State v. Patterson*, 12th Dist. Butler No. CA2001-09-222, 2002-Ohio-5996, ¶ 12. Appellant's convictions are not

against the manifest weight of the evidence merely because the trier of fact believed the testimony of the state's witnesses. *State v. Burrell*, 12th Dist. Fayette No. CA2016-04-005, 2016-Ohio-8454, ¶ 22; *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17.

{¶ 69} Accordingly, we conclude that the trial court did not lose its way or create such a manifest miscarriage of justice such that appellant's convictions must be reversed and a new trial ordered. Appellant's third assignment of error is, therefore, overruled.

{¶ 70} Assignment of Error No. 4:

{¶ 71} [APPELLANT] WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 72} In his fourth assignment of error, appellant argues he received ineffective assistance of counsel. Specifically, appellant argues trial counsel was ineffective for not properly cross-examining Burress about statements Burress made to defense counsel during a pretrial interview held on June 29, 2016.

{¶ 73} At trial, before cross-examining Burress, defense counsel revealed that he took notes during the June 29, 2016 interview and purportedly had Burress sign the notes at the conclusion of the meeting. Defense counsel's notes indicated that Burress stated he had acted as a confidential informant for CCNU in exchange for assistance in gaining custody of his children and for leniency in his own criminal case, rather than out of a civic interest in stopping the flood of heroin to New Richmond. The notes also indicated appellant never sold drugs to Burress in Clermont County and that it was "Mike" Rivera who sold drugs to Burress in New Richmond on two occasions. Defense counsel argued the notes were admissible pursuant to Evid.R. 801(D) and could be used for impeachment purposes.

{¶ 74} The state, however, argued that the notes were inadmissible as defense counsel failed to disclose them as required by Crim.R. 16(H) and the notes constituted

- 23 -

hearsay. The state further argued that admission of the notes would require defense counsel to act as a witness in the case, as defense counsel would be called to testify as to the circumstances surrounding the making of the document.

{¶ 75} The trial court did not make a ruling on the record as to the admissibility of the interview notes or defense counsel's ability to question Burress about the June 29, 2016 interview. Defense counsel did not seek to introduce the interview notes when cross-examining Burress. Instead, defense counsel proffered the notes at the close of trial. Appellant now contends that Burress' statement to defense counsel was relevant for impeachment purposes and was "significant * * * [in] suggesting that venue had not been established in the matter." Appellant therefore argues defense counsel was ineffective for not properly cross-examining Burress about his statements during the interview.

{¶ 76} To prevail on an ineffective assistance of counsel claim, an appellant must establish that (1) his trial counsel's performance was deficient and (2) such deficiency prejudiced the defense to the point of depriving the appellant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984). Trial counsel's performance will not be deemed deficient unless it "fell below an objective standard of reasonableness." *Id.* at 688. To show prejudice, the appellant must prove there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other. *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000).

{¶ 77} "The scope of cross-examination falls within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101. In evaluating trial counsel's performance, the

reviewing court must indulge a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *State v. Hendrix*, 12th Dist. Butler No. CA2012-05-109, 2012-Ohio-5610, ¶ 14.

{¶ 78} The record reveals that even without admission of the interview notes, defense counsel was able to challenge Burress' credibility and recollection of events.[6] Defense counsel got Burress to admit that he was not always an honest man, he had a prior felony conviction for use of a controlled substance, he had lied about attending M.I.T., he had violated his probation, and he had assisted CCNU's investigation in hopes that he would be able to get into a drug treatment program in lieu of receiving a prison term for violating his probation. Although defense counsel did not reference his June 29, 2016 interview of Burress during his cross-examination, defense counsel did question Burress about whether he told "different versions" of events from his trial testimony about his interactions with the police and appellant. Burress admitted he had told different versions, although he maintained he only did so to protect himself. Defense counsel, therefore, successfully challenged Burress' credibility on cross-examination and defense counsel's performance did not fall below an objective standard of reasonableness. *See, e.g., State v. Murphy*, 12th Dist. Butler No. CA2009-05-128, 2009-Ohio-6745, ¶ 32-36.

{¶ 79} Further, contrary to appellant's arguments, he was not prejudiced by trial counsel's cross-examination of Burress. Though appellant believes additional questioning would have demonstrated that venue in Clermont County had not been established, the record reveals that defense counsel cross-examined Burress on this precise issue. For

---

6. To the extent appellant is arguing that defense counsel was ineffective for failing to move to admit the interview notes into evidence, we find no merit to his argument. The interview notes constituted hearsay and were not admissible under Evid.R. 801(D)(1)(a), as Burress' statement to defense counsel was not given under oath while he was subject to cross-examination by the state. The notes were also not admissible as extrinsic evidence of a prior inconsistent statement under Evid.R. 613, as Burress' admitted to making the prior inconsistent statement. *See State v. Mathes*, 12th Dist. Clermont No. CA2012-03-028, 2013-Ohio-1732, ¶ 9-10.

instance, counsel questioned Burress about where he resided, the location where the phone calls arranging the drug transactions originated, and whether appellant was present at Perkins' apartment in New Richmond for the drug transactions involved in counts one and two. As the trial court specifically found Burress' testimony regarding his presence in Clermont County when he exchanged phone calls with appellant to set up the drug transactions credible, and such evidence was sufficient to establish venue under *Meridy*, 2005-Ohio-241, we find that appellant cannot establish the prejudice prong of *Strickland*. Appellant's argument that defense counsel was ineffective is, therefore, without merit. Appellant's fourth assignment of error is overruled.

## III. CONCLUSION

{¶ 80} Having found appellant's assignments of error to be without merit, we hereby affirm appellant's convictions for engaging in a pattern of corrupt activity, aggravated trafficking in drugs, and trafficking in heroin and cocaine.

{¶ 81} Judgment affirmed.

S. POWELL and RINGLAND, JJ., concur.